IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT CINCINNATI

DANIEL LITTLEPAGE,

          Petitioner,    :    Case No. 1:16-cv-1005

- vs -    District Judge Michael R. Barrett
    Magistrate Judge Michael R. Merz

CHARLOTTE JENKINS, Warden,
 Chillicothe Correctional Institution,

                                                                                                  :

          Respondent.

# REPORT AND RECOMMENDATIONS

This is a habeas corpus case, brought pro se by Petitioner Daniel Littlepage under 28 U.S.C. § 2254. The Petition was filed January 26, 2017 (ECF No. 9). The same day Magistrate Judge Stephanie Bowman ordered the State to file an answer (ECF No. 8). In response the Warden filed the State Court Record ("SCR")(ECF No. 13) and a Return of Writ (ECF No. 14). On July 20, 2017, Petitioner filed his Reply (ECF No. 15).

Petitioner also filed a Motion for a Complete Record to include all papers from his post-judgment mandamus action to compel discovery and to add Exhibits 16, 28, and 29 (ECF No. 16). The Magistrate Judge granted that Motion to the extent of ordering that state court decisions in the mandamus action be produced. Having examined those decisions and considered Petitioner's argument for including the entire file (ECF No. 23), the Magistrate Judge concludes no further filings from the mandamus action are needed to adjudicate this habeas corpus case.

The appellate decisions filed by Respondent show that Mr. Littlepage never obtained any

1

relief in his mandamus action. This is because, as the Ohio Supreme Court held, discovery is a pre-trial right only. *State ex rel Littlepage v. Deters*, 148 Ohio St. 3d 507, ¶ 6 (2016). *Brady v. Maryland*, 373 U.S. 83 (1963) does not apply post-conviction. *District Attorney for Third Judicial District v. Osborne*, 557 U.S. 52, 68-69 (2009). There is no *Brady* violation by failure to disclose impeachment information before guilty plea. *United States v. Ruiz,* 536 U.S. 622, 633 (2002).

Mr. Littlepage emphasizes that his attorney made a timely demand for discovery and motion for *Brady* material; copies with Littlepage's handwritten notes are attached to ECF No. 23. Ordinarily discovery in a criminal case would be made to defense counsel, not to the defendant himself, but Littlepage offers no proof from his attorney that he (Burke) did not received discovery. On the other hand, if Littlepage believed he needed discovery before pleading guilty, it was incumbent on him to say so. If there was a *Brady* violation prior to the plea, it, along with other pre-plea constitutional violations, was waived in the plea process.

Littlepage also insists that Judge Nadel's handwritten entry denying a motion for delayed appeal (ECF No. 23-1, PageID 1204) is somehow a fraud on the Court does not state a claim for habeas relief. There is no fraud at all evident in that entry. The Court declines to expand the record further by ordering the addition of more material from the mandamus proceeding.

**Procedural History**

On July 26, 2013, the Hamilton County grand jury indicted Petitioner Littlepage on one count of murder and one count of aggravated murder, both with firearm specifications, arising out of the July 18, 2013, death of Petitioner's brother Larry Littlepage.

After some pretrial litigation, Littlepage entered into a plea agreement whereby he would plead to the aggravated murder charge and one firearm specification with the remaining count and specification dismissed. The trial judge sentenced Petitioner to life imprisonment with parole eligibility at twenty years plus three consecutive years for the firearm specification.

Littlepage was sentenced in mid-January 2014, and took no direct appeal within the thirty days allowed for that process. However, in October 2014 the First District Court of Appeals granted his motion for delayed direct appeal and appointed counsel. Counsel briefed one assignment of error claiming the guilty plea was not knowing, intelligent, and voluntary. The First District, however, affirmed the conviction. *State v. Littlepage,* No. C-140574 (1st Dist. Aug. 26, 2015)(unreported; copy at ECF No. 13, PageID 550 *et seq*.), Littlepage appealed to the Ohio Supreme Court, but that court declined to exercise appellate jurisdiction. *State v. Littlepage*, 144 Ohio St. 3d 1429 (2015), *cert. denied sub. nom. Littlepage v. Ohio*, Case No. 15-8649, 136 S.Ct. 22383, 195 L.Ed.2d 270 (2016)(copy at ECF No. 13, PageID 609).

In August 2014, Littlepage filed a petition for post-conviction relief under Ohio Revised Code § 2953.21, which the trial court denied (SCR, ECF No. 13, PageID 457). That denial was affirmed on appeal. *State v. Littlepage,* No. C-140760 (1st Dist., Dec. 4, 2015)(unreported; copy at SCR, ECF No. 13-1, PageID 879-81.) Petitioner did not timely appeal and the First District denied a motion to re-file the dismissal to allow an appeal (SCR, ECF No. 13-1, PageID 882-96, PageID 897).

Littlepage filed an appeal from denial of his petition for post-conviction relief in December 2014. The First District considered the appeal on the merits, but affirmed dismissal of the petition. *State v. Littlepage*, No. 140760 (1st Dist. Dec. 4, 2015)(unreported; copy at ECF

No. 13, PageID 879 et seq.) Littlepage has also filed post-judgment motions for new trial and to withdraw guilty plea, for DNA testing, to correct his sentence, and for release of grand jury testimony, none of which have been successful.

In November 2015, Littlepage filed an application to reopen the direct appeal under Ohio R. App. P. 26(B) to raise claims of ineffective assistance of appellate counsel. The First District denied the application. *State v. Littlepage,* No. C-140574 (unreported; copy at ECF No. 13, PageID 648, et seq.). The Ohio Supreme Court declined jurisdiction over a subsequent appeal. *State v. Littlepage,* 145 Ohio St. 3d 1461 (2016).

Mr. Littlepage then filed his Petition for Writ of Habeas Corpus in this Court, pleading three grounds for relief:

> **GROUND 1:** The Ohio State lower courts erred and abused their discretion by affirming the Judgment of the Trial Court; without a De Novo review, when the Record supports that Petitioner's guilty plea was not made knowingly, intelligently or voluntarily and, in fact, was logically inconsistent with the facts and not supported by the evidence; as Petitioner is innocent.
>
> . . .
>
> **GROUND 2:** It is error and an abuse of discretion for the Ohio State Courts; especially the Court of Appeals, to ignore the clear evidence of ineffective assistance of Appellate Counsel on a Direct Appeal; after granting Petitioner's Motion to remove the same Appellate Counsel; who filed an Ander's [sic] Brief in support of Post-conviction Relief as well as error and abuse of discretion to Deny his Application to Reopen Direct Appeal under App. R. 26(B); when the Petitioner established a genuine issue as to whether he has a colorable claim of ineffective assistance of appellate counsel. See State v. Murnahan, 63 Ohio St. 3d 60 (1992). Further, the evidence presented did support that Petitioner was denied effective assistance; in that appellate counsel performed deficiently, by failing to raise arguments and assignments of error that had a reasonable probability of success had counsel presented those claims on appeal. See State v. Bradley, 42 Ohio St.3d 136 (1989).

4

> . . .
>
> > **GROUND 3**: In light of the procedural errors and omissions, the Petitioner was denied due process and fair proceedings; but due to the ineffective assistance of both trial and appellate counsel, his claims were not argued or presented; leaving his only option, A Petition for State Writ of Habeas Corpus pursuant to O.R.C. Section 2725.03, to assert that he is being unlawfully restrained of his liberty by the State of Ohio. See In Re Lockhart, 157 Ohio St.192 (1952); which held that a State Habeas Action was the appropriate vehicle to secure relief from an illegal and void sentence. Here, the constitutional violations, deprivations of substantial rights, and cumulative errors present in his state court proceedings rise to the level of Plain or Reversible Error. See Crim.R. 52(B). These errors must now be reviewed by this Federal District Court to prevent a fundamental miscarriage of justice. *Engle v. Isaac*, 456 U.S. 107 (1982)

(Petition, ECF No. 9, PageID 192, 198, 203.)

## Analysis

**Ground One: Invalid Guilty Plea**

Mr. Littlepage asserts his guilty plea was not knowing, intelligent, and voluntary and that his conviction is supported by insufficient facts in that he is actually innocent.

Warden Jenkins defends this Ground for Relief on the merits and does not raise any procedural defense (Return of Writ, ECF No. 14, PageID 1119-26).

Mr. Littlepage's Reply is not organized around his three Grounds for Relief but intersperses arguments about his plea with accusations of ineffective assistance of trial counsel, ineffective assistance of appellate counsel, fraud on the court by the trial judge, failure to

produce evidence under *Brady v. Maryland*, 373 U.S. 83 (1963), etc. Most confusing is a lack of clear chronology which would enable this Court to discern what Mr. Littlepage claims happened and when. This Report will attempt to organize the material in the Petition and Traverse around the claims actually made.

Mr. Littlepage's First Ground for Relief asserts that his plea of guilty was not knowing, intelligent, and voluntary. A plea of guilty or no contest is valid if, but only if, it is entered voluntarily and intelligently, as determined by the totality of the circumstances. *Brady v. United States,* 397 U.S. 742, 748 (1970); *Boykin v. Alabama*, 395 U.S. 238, 242-44 (1969); *King v. Dutton*, 17 F.3d 151 (6th Cir. 1994); *Riggins v. McMackin*, 935 F.2d 790, 795 (6th Cir. 1991); *Berry v. Mintzes,* 726 F.2d 1142, 1146 (6th Cir. 1984). The determination of whether this plea was intelligently made depends upon the particular facts and circumstances of this case. *Johnson v. Zerbst,* 304 U.S. 458, 463 (1938); *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993).

> A plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e. g. bribes).

*Brady v. United States*, 397 U.S. 742, 755 (1970), *quoting Shelton v. United States*, 242 F.2d 101, 115 (5th Cir. 1957).[1] The voluntariness of a guilty plea is determined in light of all relevant circumstances surrounding the plea. *Brady*, 397 U.S. at 749. If a prosecutor's promise is illusory, then a plea is involuntary and unknowing. *United States v. Randolph*, 230 F.3d 243,

---

[1] *Shelton* was later reversed by the *en banc* Fifth Circuit, 246 F.2d 571 (5th Cir. 1957), but in a memorandum opinion, the Supreme Court reversed that decision and remanded the case to the district court for further proceedings, 356 US. 26 (1958).

250–51 (6th Cir. 2000). Where a defendant is "fully aware of the likely consequences" of a plea, however, it is not unfair to expect him to live with those consequences. *Mabry v. Johnson*, 467 U.S. 504, 511 (1984). A plea-proceeding transcript which suggests that a guilty or no contest plea was made voluntarily and knowingly creates a "heavy burden" for a petitioner seeking to overturn his plea. *Garcia v. Johnson*, 991 F.2d 324, 326–28 (6th Cir. 1993). Where the transcript shows that the guilty or no contest plea was voluntary and intelligent, a presumption of correctness attaches to the state court findings of fact and to the judgment itself. *Id.* at 326–27.

A court cannot rely on the petitioner's alleged "subjective impression" "rather than the bargain actually outlined in the record," for to do so would render the plea colloquy process meaningless. *Ramos v. Rogers*, 170 F.3d 560, 566 (*6th* Cir. 1999). If the plea colloquy process were viewed in this light, any defendant who alleged that he believed the plea bargain was different from that outlined in the record would have the option of withdrawing his plea despite his own statements during the plea colloquy indicating the opposite. *Id.*

By entering a plea of guilty, the accused is not simply stating that he did the discrete acts described in the indictment; he is admitting guilt of a substantive crime. *United States v. Broce*, 488 U.S. 563, 570 (1989); *McCarthy v. United States*, 394 U.S. 459, 466 (1969).

As part of the State Court Record, Respondent has filed a transcript of the plea hearing (Transcript, ECF No. 13-2). The hearing began with a statement by the prosecutor of the facts of the crime. He recited that Larry Littlepage, the victim, was shot three times (once in the abdomen and twice in the head) at his home on Pippin Road in Colerain Township on July 18, 2013. *Id.* at PageID 1081. The body was found the next day. On July 20, 2013, Petitioner sent text messages to multiple members of his family confessing that he had planned the murder and then carried it out. *Id.* at PageID 1082. Police found Petitioner at Mount Airy Hospital in the

chapel, having overdosed on sleeping pills. *Id.* Next to him the police found a digital recorder with a lengthy confession to the murder. *Id.* at PageID 1082-83. After he was restored to consciousness by hospital personnel, he was Mirandized and he again confessed. *Id.* This process was repeated after his release from the hospital. *Id.* at PageID 1083. Mr. Littlepage stated his motive for killing his brother arose from a family dispute following his father's death in 2010. *Id.*

Judge Nadel then asked Littlepage if he was pleading guilty of his own free will and he responded that he was. *Id.* at PageID 1084. Putting the matter the other way around, Judge Nadel asked him if anyone had "made any threats, promises, or anything like that to get you to plea[d]" and he responded "no, sir." *Id.*

Judge Nadel then advised Littlepage of the possible sentences, life without parole or life with parole eligibility after twenty, twenty-five, or thirty years. (Transcript, ECF No. 13-2, PageID 1085.) He then mentioned that there could be a fine of up to $25,000 and that there would be a mandatory consecutive sentence of three years on the gun specification. *Id.* at PageID 1084. Judge Nadel also discussed the written plea form and confirmed that Littlepage had signed it of his own free will. *Id.* at PageID 1087. He obtained an acknowledgement from Littlepage that "by pleading guilty, you make a complete admission of your guilt." *Id.* Judge Nadel explained the rights being waived by the plea and Littlepage's understanding that he was giving up those rights by pleading guilty. *Id.* at PageID 1088. Mr. Littlepage affirmed that he was not under the influence of drugs or alcohol. *Id.* The Judge then accepted the guilty plea. *Id.*

On appeal Littlepage raised a single assignment of error, to wit, that his plea was not made knowingly, intelligently, and voluntarily because Judge Nadel did not comply with Ohio R. Crim. P. 11(C)(2)(A) by advising him that he was not eligible for community control (*State v.*

*Littlepage*, No. C-140574 (1st Dist. Aug. 26, 2015), SCR, Ex. 35, PageID 550). He made additional arguments about not making a separate plea to the firearm specification and not being told he would not be permitted to ingest drugs of abuse in prison and would be subject to random drug testing while incarcerated. The First District found that none of these recitals was necessary under Ohio Crim. R. 11 and affirmed the conviction.

As the law cited above makes clear, the question of whether a plea was knowing, intelligent, and voluntary is a question of federal constitutional law. That is to say, a person who is convicted and sentenced on a guilty plea that is not knowing, intelligent, and voluntary has been deprived of due process of law as guaranteed by the Fourteenth Amendment. Ohio R. Crim. P. 11 is designed to protect that due process right by ensuring that guilty pleas are constitutional.

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86, 100 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000). Deference is also not required if the state court decision "is based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d)(2).

The question of whether a plea was knowing, intelligent, and voluntary is a question of fact on which a state court finding is entitled to deference in the absence of clear and convincing evidence to the contrary. Certainly on the face of the Plea Transcript there is no evidence that the plea was invalid. Littlepage heard the facts as recited by the prosecutor and made no claim

they were in error. He heard the nature of the charge and the possible sentences and the rights he would be giving up by pleading guilty. Nothing that was before the trial court or the First District on direct appeal rebuts a finding that the plea was constitutionally valid.

Ohio allows a person who contends his conviction was unconstitutionally obtained to file a petition for post-conviction relief under Ohio Revised Code § 2953.21 and Littlepage did so. In his Petition, his first claim was that he received ineffective assistance of trial counsel from his trial attorney, Daniel F. Burke, Jr., because Burke "coerced him into pleading guilty . . . failed to investigate my claims, perfect evidence, or gather *Brady* materials." (ECF No. 13, PageID 271.) As evidence he referred to his own attached Affidavit, "photos gathered after trial, drug information showing my diminished capacity, and e-mails from deceaced's [sic] son." *Id.* In his claim number two, he asserted Judge Nagel was biased against him; that the judge's conduct prevented him from presenting his defense of innocence; that his diminished capacity was evident from his attempted suicide at the Justice Center;and that his plea was coerced by his attorney, the prosecutor, and the "judge's bias and prejudice." In claim number three he alleged prosecutorial misconduct by (1) coercing the plea of guilty while knowing of his diminished capacity, (2) refusing to investigate his claims of innocence, and (3) refusal to turn over *Brady* materials including gunshot residue test results.

The Petition is supported by a seventy-three paragraph affidavit of Daniel Littlepage (executed on July 28, 2014) in which he claims he was present when his brother Gary shot the victim, but he was just listening and did not actually see the shooting. He admits that he went to the victim's house on July 18, 2013, the day of the killing, to confront the victim over being sued by the victim and other siblings for part of his father's estate; his father had died in 2010. He admits that after the shooting he went home, had a confrontation with his wife, and attempted

10

suicide by consuming seventy 30mg tablets of Temazepam. Littlepage asked for the appointment of an investigator and a "reconstructionist" who he said would find physical evidence to confirm his version of the events. Other attachments are a set of photographs of the house where the murder occurred, the purported contents of emails from the deceased's son which are not facially exculpatory, and lengthy public domain materials describing possible side effects of Temazepam.

In his Reply Memorandum in support of his Petition, he refers to conversations his attorneys had with his daughter and provides an affidavit from his wife recounting a conversation in which Daniel Burke, one of his trial attorneys, said he was not going to take the pictures of Larry Littlepage's house that Petitioner had requested (ECF No. 13, PageID 380). She avers that she herself took the pictures, the ones attached to the Petition. A parallel affidavit from Monica Littlepage, Petitioner's daughter, was also filed. *Id.* at PageID 381. There is also an attached letter from a Doctor Dirk Hines who treated Petitioner with antidepressants and the Temazepam. *Id.* at PageID 383. He makes no comments about any likelihood of medication effects at the time of Littlepage's plea.

On appeal from Judge Nadel's denial of the post-conviction petition, the First District held as follows:

> Neither the record of the proceedings leading to Littlepage's conviction upon his plea nor the outside evidence offered in support of his postconviction claims demonstrate that his plea was the unknowing, involuntary, or unintelligent product of his trial counsel's ineffectiveness, the trial judge's predisposition against him, prosecutorial misconduct, or any medication that he was taking.
>
> Thus, Littlepage, by his guilty plea, waived those challenges to his conviction that were unrelated to the entry of his plea. And with respect to his challenges to the knowing, voluntary, and intelligent nature of his plea, he failed to sustain his burden of submitting

> evidentiary material setting forth sufficient operative facts to demonstrate substantive grounds for relief. We, therefore, hold that the common pleas court properly denied Littlepage's postconviction petition without an evidentiary hearing. See R.C. 2953.21(C) and (E); *State v. Pankey*, 68 Ohio St.2d 58, 428 N.E.2d 413 (1981); *State v. Jackson,* 64 Ohio St.2d 107, 413 N.E.2d 819 (1980). Accordingly, we overrule the assignments of error and affirm the court's judgment.

*State v. Littlepage,* No. C-140760 (1st Dist. Dec. 4, 2015)(unreported; copy at ECF No. 13-1, PageID 881).

This decision is not based on an unreasonable determination of the facts based on the evidence presented. Littlepage made no protest of innocence at the time of his plea or at the time of sentencing. The photographs he wanted Burke to take do not demonstrate anything about his innocence; the captions he has added to them are of course unsworn hearsay. It does not constitute ineffective assistance of trial counsel to fail to gather evidence which, while it might have supported Littlepage's eventual narrative about what happened, in themselves prove nothing. Nothing in his post-conviction filings shows he would have been under the influence of Temezapam when he made his plea and of course he swore to Judge Nadel that he was not under the influence of any drug. More importantly, his affidavit is, as Judge Nadel found, very self-serving. He admits being present when the victim was shot and being armed at the time. He admits a motive to confront the victim over what happened with his father's estate. He offers no motive for Gary Littlepage to have shot the victim when apparently Gary and Larry were among the siblings against whom Daniel had a grudge. He offers no proof of any coercion by his trial attorney, the prosecutor, or Judge Nadel. Nor does he offer any explanation of his pre-custody recorded confession or of his emails to family members admitting the murder. Because Littlepage's post-conviction petition does not present evidence sufficient to overcome his solemn

admission of guilt at the plea colloquy, the Magistrate Judge finds that the conclusion of the Ohio courts that the plea was knowing, intelligent, and voluntary is not an unreasonable determination of the facts on the basis of the evidence presented.

The First Ground for Relief is therefore without merit.

**Ground Two: Ineffective Assistance of Appellate Counsel**

In his Second Ground for Relief, Littlepage claims he received ineffective assistance of appellate counsel.

The governing standard for ineffective assistance of counsel is found in *Strickland v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687. In other words, to establish ineffective assistance, a defendant must show both deficient performance and prejudice. *Berghuis v. Thompkins,* 560 U.S. 370, 389 (2010), *citing Knowles v. Mirzayance,* 556 U.S.111 (2009).

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires

> that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome.

466 U.S. at 694. *See also Darden v. Wainwright*, 477 U.S. 168 (1986); *Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998); *Blackburn v. Foltz*, 828 F.2d 1177 (6th Cir. 1987). *See generally* Annotation, 26 ALR Fed 218.

A criminal defendant is entitled to effective assistance of counsel on appeal as well as at trial, counsel who acts as an advocate rather than merely as a friend of the court. *Evitts v. Lucey*, 469 U.S. 387 (1985); *Penson v. Ohio*, 488 U.S. 75 (1988); *Mahdi v. Bagley*, 522 F.3d 631, 636 (6th Cir. 2008). Counsel must be appointed on appeal of right for indigent criminal defendants. *Douglas v. California*, 372 U.S. 353 (1963); *Anders v. California*, 386 U.S. 738 (1967); *United States v. Cronic,* 466 U.S. 648 (1984). The right to counsel is limited to the first appeal as of right. *Ross v. Moffitt*, 417 U.S. 600 (1974). The *Strickland* test applies to appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Burger v. Kemp,* 483 U.S. 776 (1987). To evaluate a claim of ineffective assistance of appellate counsel, then, the court must assess the strength of the claim that counsel failed to raise. *Henness v. Bagley*, 644 F.3d 308 (6th Cir. 2011), *citing Wilson v. Parker*, 515 F.3d 682, 707 (6th Cir. 2008). Counsel's failure to raise an issue on appeal

amounts to ineffective assistance only if a reasonable probability exists that inclusion of the issue would have changed the result of the appeal. *Id.*, *citing Wilson.* If a reasonable probability exists that the defendant would have prevailed had the claim been raised on appeal, the court still must consider whether the claim's merit was so compelling that the failure to raise it amounted to ineffective assistance of appellate counsel. *Id., citing Wilson.* The attorney need not advance every argument, regardless of merit, urged by the appellant. *Jones v. Barnes*, 463 U.S. 745, 751-752 (1983)("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." 463 U.S. 751-52). Effective appellate advocacy is rarely characterized by presenting every non-frivolous argument which can be made. *Joshua v. DeWitt*, 341 F.3d 430, 441 (6th Cir. 2003); *Williams v. Bagley,* 380 F.3d 932, 971 (6th Cir. 2004), *cert. denied,* 544 U.S. 1003 (2005); *see Smith v. Murray*, 477 U.S. 527 (1986).

As with all other claims presented in federal habeas, a claim of ineffective assistance of appellate counsel must first be presented to the state courts. Littlepage did so in the way required by Ohio law, by submitting an Application to Reopen his direct appeal under Ohio R. App. P. 26(B). The First District considered that Application on the merits and denied it. *State v. Littlepage*, No. C-140574 (1st Dist. Jan 26, 2016)(unreported; copy at SCR, ECF No. 13, PageID 648-50.) Noting that Littlepage had pleaded guilty to aggravated murder, the First District further recorded that appellate counsel had raised only one assignment of error, "contending that Littlepage's guilty plea was not knowing, voluntary, or intelligent." *Id.* at PageID 649. The First District decided the ineffective assistance of appellate counsel claim as follows:

> In his application to reopen this appeal, Littlepage contends that his appellate counsel was ineffective in presenting in his brief "only a far reaching speculative technical issue, without Assignments of Error such as: (A) Miranda Violations; (B) Weight

15

> and Sufficiency of Evidence; (C) Diminished Capacity; (D) Actual Innocence; (E) Interview Suppression; and (F) Ineffective Assistance of Trial Counsel."
>
> By his knowing, voluntary, and intelligent guilty plea, Littlepage waived his proposed actual-innocence, diminished-capacity, and weight-and-sufficiency claims. *See* Crim.R. 11(B)(1) (providing that a guilty plea is a complete admission of guilt); *State v. Wilson*, 58 Ohio St.2d 52, 388 N.E.2d 745 (1979), paragraph one of the syllabus (holding that "a counseled plea of guilty is an admission of factual guilt which removes issues of factual guilt from the case"). He also waived his proposed Fourth Amendment challenges. *See State v. Spates*, 64 Ohio St.3d 269, 272, 595 N.E.2d 351 (1992), quoting *Tollett v. Henderson*, 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973) (holding that a knowing, voluntary, and intelligent guilty plea waives any "independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea"). And he waived all challenges to his trial counsel's ineffectiveness unrelated to the knowing, involuntary, or intelligent nature of his guilty plea. *See id.* Accordingly, appellate counsel cannot be said to have been ineffective in failing to assign these matters as error on appeal.
>
> Nor was appellate counsel ineffective in failing to assign as error trial counsel's ineffectiveness in counseling Littlepage's guilty plea. The proposed challenge depends for its resolution upon evidence outside the trial record. Therefore the appropriate vehicle for advancing it is a postconviction petition. *See State v. Perry,* 10 Ohio St. 2d 175, 226 N.E. 2d 104 (1967), paragraph nine of the syllabus.

*Id.* at PageID 649-50.

Littlepage argues he was prejudiced by appellate counsel's performance because he was not able to argue his additional assignments of error (Petition, ECF No. 9, PageID 197). The First District actually decided the ineffective assistance of appellate counsel claim on the first *Strickland* prong, holding there was no deficient performance in failing to raise assignments of error whose consideration was blocked by the res judicata rule in *State v. Perry*.

Here, as with the First Ground for Relief, this Court must defer to the state court

16

conclusion unless it is an objectively unreasonable application of clearly established Supreme Court precedent. *Terry Williams v. Taylor*, 529 U.S. 362, 409-13 (2000). The Magistrate Judge concludes the decision was not objectively unreasonable. It applied the correct federal constitutional standard under *Strickland*. It found that the omitted assignments of error could not have been heard because of the guilty plea and the *State v. Perry* bar. This was a correct application of *Tollett v. Henderson, supra*. The Sixth Circuit has repeatedly held that the res judicata rule of *State v. Perry* is an adequate and independent state ground of decision. *Durr v. Mitchell*, 487 F.3d 423, 432 (6th Cir. 2007); *Buell v. Mitchell*, 274 F.3d 337 (6th Cir. 2001); *Coleman v. Mitchell*, 268 F.3d 417 (6th Cir. 2001); *Byrd v. Collins*, 209 F.3d 486, 521-22 (6th Cir. 2000); *Rust v. Zent,* 17 F.3d 155, 160-61 (6th Cir. 1994)(citation omitted); *Van Hook v. Anderson*, 127 F. Supp. 2d 899, 913 (S.D. Ohio 2001).

Accordingly, the Second Ground for Relief is without merit.

**Ground Three: Cumulative Error/Inadequate State Review**

In his Third Ground for Relief, Mr. Littlepage seems to be claiming that all of the errors in his trial and appellate court proceedings, taken together, entitle him to habeas corpus relief.[2]

After enactment of the Antiterrorism and Effective Death Penalty Act in 1996, a claim of cumulative error is not cognizable in habeas corpus. *Sheppard v. Bagley*, 657 F.3d 338, 348 (6th Cir. 2011), *cert. denied,* 132 S.Ct. 2751 (2011), *citing Moore v. Parker,* 425 F.3d 250, 256 (6th Cir. 2005), *cert. denied sub nom. Moore v. Simpson,* 549 U.S. 1027 (2006).

> Moreland argues that the cumulative effect of counsel's errors
> should be considered in determining whether he has demonstrated

---

[2] Littlepage makes a reference in the text of his Ground Three to a state action for habeas corpus. He has never filed such an action, so far as the record discloses.

a reasonable probability of a more favorable outcome. However, "post-AEDPA, not even constitutional errors that would not individually support habeas relief can be cumulated to support habeas relief." *Hoffner v. Bradshaw*, 622 F.3d 487, 513 (6th Cir. 2010) (quoting *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005)).

*Moreland v. Bradshaw*, 699 F.3d 908, 931 (6th Cir. 2012), *cert. denied sub nom. Moreland v. Robinson*, 134 S.Ct. 110 (2013).

Similarly, a claim that a state court review process is inadequate is also not cognizable in habeas corpus. *Kirby v. Dutton,* 794 F.2d 245 (6th Cir. 1986)(claims of denial of due process and equal protection in collateral proceedings not cognizable in federal habeas because not constitutionally mandated).

**Littlepage's Claim of Actual Innocence**

Throughout his pleadings in this case and previously in the state court proceedings, starting at least with his petition for post-conviction relief, Littlepage has claimed that he is actually innocent of the murder of his brother Larry because the murder was actually committed by his brother Gary.

As the Warden points out, a free-standing claim of actual innocence will not support habeas corpus relief. *Herrera v. Collins*, 506 U.S. 390, 408-11 (1993).

> Case law in the Sixth Circuit establishes that the Supreme Court of the United States has never recognized a free-standing or substantive actual innocence claim. *Cress v. Palmer*, 484 F.3d 844, 854 (6th Cir. 2007), *citing Zuern v. Tate*, 336 F.3d 478, 482, n.1 (6th Cir. 2003), and *Staley v. Jones*, 239 F.3d 769, 780, n.12 (6th Cir. 2001). The Supreme Court has twice suggested that a "truly persuasive demonstration" of actual innocence would render a

> petitioner's execution unconstitutional. *Herrera v Collins,* 506 U.S. 390, 417 (1993); *House v. Bell*, 547 U.S. 518 (2006).

*Raymond v. Sheets*, 2012 U.S. Dist. LEXIS 160374, *26-27 (S.D. Ohio Nov. 8, 2012); *Stojetz v. Ishee*, 2014 U.S. Dist. LEXIS 137501 *185-86 (S.D. Ohio Sept. 24, 2014)(Frost, D.J.).

The federal courts will recognize evidence of actual innocence as excusing procedural default of some other constitutional claim or as extending the statute of limitations. *McQuiggin v. Perkins*, 569 U.S. 383 (2013). However, Littlepage does not present an actual innocence claim of this sort. Instead, he claims that because he is actually innocent, he must be released or at least given a trial.

As the First District has explained but Petitioner seems not to understand, a plea of guilty which is knowing, intelligent, and voluntary waives any right to a trial, to the presumption of innocence, to present evidence, etc. Mr. Littlepage was not denied an opportunity to have a trial or present evidence. Instead, he waived those rights by pleading guilty. While he claims he has never wavered in his claim of innocence, that is not accurate. He appeared in open court and solemnly admitted that he was guilty. Before that happened, he had made the digital recording of a confession before he took the overdose. After he recovered from the overdose, he confessed twice more. At the sentencing hearing, he twice apologized for what he had done. When Judge Nadel asked him why he killed his brother, he said it was "[j]ust a lot of stuff going on." (Transcript, SCR, ECF No. 13-3, PageID 1095). Later in the colloquy Littlepage said he was sorry it ever happened. *Id.* at 1097. At no point in the proceeding did he claim he was innocent.

**Conclusion**

Based on the foregoing analysis, it is respectfully recommended that the Petition be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous and therefore should not be permitted to proceed *in forma pauperis*.

December 20, 2017.

> s/ *Michael R. Merz*
> United States Magistrate Judge

### NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by mail. .Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).